# ORIGINAL

FILED IN CLERK'S OFFICE

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

DEC 1 2 2005

LUT~~~~~~~~ ~lerk
By. ~~~~~~ Deputy Clerk

| | | |
|---|---|---|
| RUBY MANN, as Administrator of the | : | |
| Estate of MELINDA NEAL FAIRBANKS | : | |
| and as Guardian of Jonathon Cody Fairbanks | : | |
| And Haley Nicole Fairbanks, Minors; and | : | |
| JOHN WILLIAM FAIRBANKS, JR., Individually | : | |
| and as spouse of MELINDA NEAL FAIRBANKS,: | | |
| Deceased. | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | Civil Action No.: |
| | : | |
| TASER INTERNATIONAL, INC., | : | |
| HAMILTON HEALTH CARE SYSTEMS, INC. | : | |
| d/b/a WHITFIELD COUNTY EMERGENCY | : | |
| MEDICAL SERVICES; JOE BURGE, | : | |
| Individually and his Official capacity as | : | |
| DEPUTY SHERIFF OF WHITFIELD COUNTY; | : | |
| SHAWN GILES, Individually and his Official | : | |
| capacity as DEPUTY SHERIFF OF WHITFIELD | : | |
| COUNTY; CLAUDE CRAIG, Individually and | : | |
| his official capacity as DEPUTY SHERIFF OF | : | |
| WHITFIELD COUNTY; and TERRY STOREY, | : | |
| Individually and Official Capacity as DEPUTY | : | |
| SHERIFF OF WHITFIELD COUNTY; JOHN | : | |
| DOES I and II, Individually and Official Capacity | : | |
| As DEPUTY SHERIFF OF WHITFIELD | : | |
| COUNTY;  and JOHN DOE III, INC. | : | |
| | : | |
| Defendants, | : | |

1

## PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL OF TWELVE

**COME NOW,** Plaintiffs **RUBY MANN, as Administrator of the Estate of Melinda Neal Fairbanks and as Guardian of Jonathan Cody Lee Fairbanks and Haley Nicole Fairbanks, Minors** (hereinafter referred to as "Plaintiff Mann") and **JOHN WILLIAM FAIRBANKS, JR.** (hereinafter referred to as "Plaintiff Fairbanks") , by and through their attorney of record, Genevieve L. Frazier, 101 E. Second Avenue, Suite 350, P.O. Box 906, Rome, Georgia 30162-0906, and files their Complaint for Damages and Demand for Jury Trial against Defendants, **TASER INTERNATIONAL, INC.** (hereinafter referred to as "Defendant Taser Co."), **HAMILTON HEALTH CARE SYSTEMS, INC. d/b/a WHITFIELD COUNTY EMERGENCY MEDICAL SERVICES** (hereinafter referred to "Defendant EMS" or "EMS"); **JOE BURGE, Individually and his Official capacity as DEPUTY SHERIFF OF WHITFIELD COUNTY** (hereinafter referred to as "Defendant Burge" or "Deputy Burge"); **SHAWN GILES, Individually and his Official capacity as DEPUTY SHERIFF OF WHITFIELD COUNTY** (hereinafter referred to as "Defendant Giles" or "Deputy Giles"); **CLAUDE CRAIG, Individually and his Official capacity as DEPUTY SHERIFF OF WHITFIELD COUNTY** (hereinafter referred to as

2

"Defendant Craig" or "Sgt. Craig");  **TERRY STOREY, Individually and Official Capacity as DEPUTY SHERIFF OF WHITFIELD COUNTY** (hereinafter referred to as "Defendant Storey" or "Lt. Storey") and **JOHNS DOE I and II, Individually and Official Capacity as DEPUTY SHERIFF OF WHITFIELD COUNTY,** the Deputy Sheriffs collectively sometimes referred to herein as "Defendant Deputies"**, JOHN DOE III, INC.** (hereinafter referred to as "Defendant Distributor") as follows:

## JURISDICTION AND VENUE

1.

The aforementioned action is a civil action over which this Court has original jurisdiction under the provision of 28 U.S.C. Section 1331 and accordingly is one which may be filed in this Court.

2.

Defendant Taser International, Inc., is a duly authorized and existing "for profit" corporation under the laws of the State of Delaware with its principal place of business in Scottsdale, Arizona. Defendant Taser Company lawfully designs, manufactures, tests, inspects, advertises, sells, distributes and provides training and instruction on the use of a weapon known as the "TASER" to law enforcement

3

agencies within the State of Georgia, including the Sheriff's Department of

Whitfield County to be used by Defendant Deputies. Defendant Taser Company

may be served through its agent, CT Corporation, 3225 North Central Avenue,

Phoenix, Arizona, 85012. It is subject to the jurisdiction and venue of this court.

2.

Defendant Hamilton Health Care Systems, Inc. is a duly authorized and

existing "for profit" corporation under the laws of the State of Georgia. It owns,

operates and controls a division known as Whitfield County Emergency Medical

Service. Gary L. Howard is the Chief Financial Officer and agent for service. He

may be served at 1200 Memorial Drive, Dalton, Georgia 30722. It is subject to

the jurisdiction and venue of this court.

3.

At all times material herein, Defendant Burge was an individual citizen of

the State of Georgia and resident of Whitfield County who was employed by Scott

Chitwood, Sheriff of Whitfield County. Defendant Burge is being sued

individually and in his official capacity. He may be served with legal process at the

Office of Scott Chitwood, Sheriff, Sheriff's Department of Whitfield County, 805

4

Professional Boulevard Dalton, GA 30720. Said Defendant is subject to the jurisdiction and venue of this court.

4.

At all times material herein, Defendant Giles was an individual citizen of the State of Georgia and resident of Whitfield County who was employed by Scott Chitwood, Sheriff of Whitfield County. Defendant Giles is being sued individually and in his official capacity. He may be served with legal process at the Office of Scott Chitwood, Sheriff, Sheriff's Department of Whitfield County, 805 Professional Boulevard Dalton, GA 30720. Said Defendant is subject to the jurisdiction and venue of this court.

5.

At all times material herein, Defendant Craig was an individual citizen of the State of Georgia and resident of Whitfield County who was employed by Scott Chitwood, Sheriff of Whitfield County. Defendant Craig is being sued individually and in his official capacity. He may be served with legal process at the Office of Scott Chitwood, Sheriff, Sheriff's Department of Whitfield County, 805 Professional Boulevard Dalton, GA 30720. Said Defendant is subject to the jurisdiction and venue of this court.

6.

At all times material herein, Defendant Storey was an individual citizen of

the State of Georgia and resident of Whitfield County who was employed by Scott

Chitwood, Sheriff of Whitfield County. Defendant Storey is being sued

individually and in his official capacity. He may be served with legal process at the

Office of Scott Chitwood, Sheriff, Sheriff's Department of Whitfield County, 805

Professional Boulevard Dalton, GA 30720. Said Defendant is subject to the

jurisdiction and venue of this court.

7.

At all times material herein, Defendants John Does I and II were individual

citizens of the State of Georgia and residents of Whitfield County who were

employed by Scott Chitwood, Sheriff of Whitfield County. Defendants John Does I

and II are being sued individually and in their official capacity. John Does I and II

were responsible for using chemical spray and strangling Melinda Neal Fairbanks.

Once identified John Does I and II may be served with legal process at the Office

of Scott Chitwood, Sheriff, Sheriff's Department of Whitfield County, 805

Professional Boulevard Dalton, GA 30720. Said Defendants, once served, are

subject to the jurisdiction and venue of this court.

6

8.

At all times material herein, Defendant John Doe III is believed to be a distributor of the weapon known as a TASER designed and manufactured by Defendant Taser International, Inc. Defendant John Doe III when identified, is being sued in negligence and for intentionally misleading and failing to warn Defendant Deputies and the Sheriff's Department of Whitfield County as more fully set forth herein below. Once identified and served with this complaint said Defendant is subject to the jurisdiction and venue of this court.

9.

Plaintiffs Mann and Fairbanks have provided notice of this claim to the Whitfield County Sheriff directly and through Robert Smalley, Esq., Attorney for Whitfield County, pursuant to and in accordance with O.C.G.A. § 36-11-1.

10.

Plaintiffs Mann and Fairbanks have provided notice of this claim to the State of Georgia directly by serving the Defendant Deputies and through the Attorney General for the State of Georgia, pursuant to and in accordance with O.C.G.A. § 36-11-1.

7

11.

Plaintiffs are providing notice of this claim to each law enforcement officer

employed by the Sheriff of Whitfield County, individually and as Officers of the

Sheriff of Whitfield County and of the State of Georgia through personal service.

12.

Plaintiffs have complied with all jurisdictional and venue notice and ante

litem requirements, including, but not limited to those set forth in O.C.G.A. §36-

11-1.

13.

On or about June 22, 2005, as hereinafter set forth, Melinda Neal Fairbanks

was an individual and citizen of Whitfield County, State of Georgia.

14.

On or about June 22, 2005, Melinda Neal Fairbanks was mother of two

minor children, Haley Nicole Fairbanks, age six (6), and Jonathon Cody Fairbanks,

age fifteen (15), currently in the legal custody of their paternal grandmother,

Plaintiff Ruby Mann, who is Administrator of their mother's estate. She files this

wrongful death claim in her individual capacity as Guardian and as Administrator

of the Estate pursuant to O.C.G.A. §51-4-5 and 19-7-1.

8

15.

On or about June 22, 2005, Melinda Neal Fairbanks was the wife of Plaintiff John William Fairbanks, Jr. He files this wrongful death claim in his individual capacity as her husband pursuant to O.C.G.A. §51-4-2.

16.

At the time of her death, Melinda Neal Fairbanks was arrested, brutally beaten and strangled, chemically sprayed and repeatedly and continuously stunned with a TASER that emits as much as 50,000 volts of electricity. She was subsequently denied timely medical treatment dying as a direct result of Defendants Burge, Defendant Giles, Defendant Craig and Defendant Storey and Defendants John Doe I and II's deliberate indifference to the health and welfare of the decedent by excessive use of force and refusing emergency medical services while injured and dying.

17.

The enumerated acts and omissions of Defendant Deputies as more fully set forth herein are a violation of Plaintiff's rights under 42 USC 1983 and the Fourth, Eighth and Fourteenth Amendments of the Constitution of the United States for

which the Defendant Deputies should not be entitled to Eleventh Amendment Immunity.

18.

At the time of her death, Melinda Neal Fairbanks was injured and died as a direct result of the Deputy Burge, Deputy Giles, Deputy Craig and Deputy Storey's failure to perform their ministerial duties as Officers' of the Sheriff Department of Whitfield County in several ways as more fully set forth herein; but to include, violation of the policy and procedures of the Sheriff's Department and the Standards for Peace Officers adopted by the State of Georgia in the arrest, search, use of chemicals and Taser stun gun against a detainee and by refusing her timely emergency medical services while injured, in acute respiratory distress and dying.

19.

The above enumerated acts and omissions of Defendant Deputies are a violation of Plaintiff's rights under Constitution of the State of Georgia for which the Defendant Deputies should not be entitled to Sovereign Immunity because any reasonable person would know there is a high likelihood Melinda Neal Fairbanks would die.

10

20.

At all times material herein, the emergency medical technicians that responded to a summons at the scene of Melinda Neal Fairbank's arrest were acting within the course and scope of their employment with Defendant EMS.

21.

On or about June 22, 2005, Melinda Neal Fairbanks' death was a direct result of the negligence of Defendant EMS', independent of and jointly with the deliberate indifference of Defendant Deputies and intentional and negligent conduct of Defendant Taser Company and John Doe III, when EMS' employees refused to render aid and sedate her and refused to transport her to the hospital.

22.

Melinda Neal Fairbanks' death was a direct result of the negligent and intentional decision of Defendant Taser Company and John Doe III, individually and jointly with Defendants EMS and Deputies, not to warn law enforcement agencies it's TASER should be used with extreme caution on subjects who were highly combative, agitated, exhibiting paranoia, or drugs because of the likelihood

11

it would be fatal when used against such subjects. Defendant Taser Company knew

fatalities occurred in over one hundred (100) subjects, greater than seventy (70)

having died of purported excited delirium after arrest and "tasered". Defendant

Taser company knew and failed to warn continuous, repeated or prolonged use of

its TASER against such subjects only enhanced their agitation and the probability

of death from cardiac arrest.

23.

Defendants, and each of them, are individually liable for their acts and

omissions that proximately caused the death of Melinda Neal Fairbanks.

24.

Venue is proper as to all defendants in the United States District Court,

Rome Division, State of Georgia.

25.

In apportioning liability, it is in the enlightened conscience of the jury to

determine the percentage of liability to attribute to the Defendants, and each one of

them, for the injuries and death of Melinda Neal Fairbanks, deceased.

12

## STATEMENT OF FACTS AND BACKGROUND

26.

On Tuesday, June 22, 2005 at approximately 2:43 p.m., Melinda Neal
Fairbanks, unarmed and suffering from mental illness, called 911 seeking police
assistance. She entered a private residence through an open unsecured front door
into, what she believed to be her home, and found someone present and her
personal property missing.

27.

Defendant Deputies, began arriving at approximately 3:02 p.m. Melinda
Neal Fairbanks perceived, albeit delusional, her home was unlawfully invaded and
her personal property stolen. She made no aggressive acts toward the persons she
thought had invaded her residence, but called for police assistance.

28.

For almost an hour, between 3:02 .m. and approximately 3:51 p.m., while
unarmed, she was arrested, hand cuffed, shackled, beaten suffering hemorrhaging
and contusions to the brain, strangled with resultant hemorrhaging to the thyroid
area, pepper sprayed and repeatedly charged with electricity where the darts from
the TASER penetrated and burned her left breast nipple and chest near her heart.

13

29.

At the scene, Defendant Deputies placed her into the patrol car without searching her body in violation of department policy and procedure and Peace Officer Standards. Defendant Deputies placed her into the patrol car without securing her in the seat belt in violation of department policy and procedure and Peace Officer Standards.

30.

Melinda Neal Fairbanks, frightened, paranoid, hand cuffed and shackled, resisted as Defendant Deputies then forcibly removed her from the patrol car to conduct the omitted search wherein she was beaten and strangled causing life threatening injuries to her head and neck, placing back into the car, again without being secured by seatbelt.

31.

At the scene of arrest, Defendant Deputies knew Melinda Neal Fairbanks had a history of using drugs having previously transported her to the hospital.

14

32.

At the scene of arrest, Defendant Deputies knew she was hot, paranoid, highly combative, extremely agitated, and advised by one or more witnesses she was mentally ill but, due to an inability to pay, had discontinued her medication.

33.

At the scene of arrest, Defendant Deputies, knowing she was mentally incapable of understanding and obeying commands, ordered her to stop kicking the patrol car, continued to agitate her by unnecessary restraints, pulled her in and out of the car, inflicted painful beatings, strangled her, and burned her with pepper spray and electrical shock.

34.

It was Defendant Deputies omissions that facilitated the damage to the patrol car.

35.

Defendant Deputies were angry Melinda Neal Fairbanks had damaged the patrol car.

36.

Defendant John Doe I, with the approval and cooperation of the other Defendant Deputies, including superior officers, sprayed her with chemicals, further increasing her pain, blood pressure and heart rate.

37.

Defendant John Doe II, with the approval and cooperation of Defendant Deputies, including superior officers, strangled her causing hemorrhaging in the throat further increasing her pain, blood pressure and heart rate.

38.

The injuries to Melinda Neal Fairbanks' head and neck were life-threatening injuries.

39.

Deputy Burge, with the approval and cooperation of Defendant Deputies, including his superior officers, shot Melinda Neal Fairbanks with the TASER thirteen (13) times in the left breast nipple and chest causing severe pain, second degree burns and further increased her blood pressure and heart rate.

40.

Defendant Deputies, maliciously and with reckless indifference, kept

Melinda Neal Fairbanks at the scene for almost an hour while denying her

immediate transport to an emergency facility.

41.

On occasion during this hour, seven law enforcement officers were present

at the scene.

42.

Defendant Deputies were not reasonably in fear of their safety.

43.

Defendant Deputies actions were not due to any reasonable concern she

would injure herself having placed her in hand cuffs and shackles and confined in

the patrol car.

44.

Had Melinda Neal Fairbanks been sedated at the scene of the accident and

timely transported to the hospital she would not have died from cardiac arrest.

45.

Melinda Neal Fairbanks was an unarmed woman handcuffed and shackled when she was chemically sprayed.

46.

Melinda Neal Fairbanks was an unarmed woman handcuffed, shackled and lying in the back of the patrol car when shot by TASER repeatedly, continuously and over a prolonged period of time through her left breast nipple and chest causing painful second degree burns.

47.

Melinda Neal Fairbanks was an unarmed woman handcuffed and shackled when she was strangled causing hemorrhaging to the neck behind the thyroid.

48.

Melinda Neal Fairbanks was an unarmed woman handcuffed and shackled when she was beaten over her entire body. Her head was injured so severely her brain hemorrhaged and bruised.

49.

Prior to being shot repeatedly by TASER, Defendant Deputies had failed to properly secure her in the back of the patrol car, hand cuffed and shackled her, beaten her repeatedly, strangled her and sprayed her with chemicals.

50.

Defendant Deputies use of force as herein above described was plainly excessive, wholly unnecessary, and grossly disproportionate and no reasonable officer could have had a mistaken understanding as to whether the particular amount of force was legal in these circumstances.

51.

Defendant Deputies, as such, denied the detainee's constitutional right to be free from excessive use of force guaranteed by the Fourth and Fourteenth Amendment to the Constitution of the United States and 41 U.S.C. 1983.

52.

Defendant Deputies exercised their discretion as Officers of the Whitfield County Sheriff's Department when deciding to arrest Melinda Neal Fairbanks but their acts and omissions in failing to follow department policy and procedures and Peace Officer Standards in excessive use of force, failing to search her prior to

19

placing her in the patrol car and failing to secure her once she was placed into the patrol car was ministerial.

53,

It was obvious to Defendant Deputies that the repeated efforts at restraint pulling her into and out of the patrol car, and the pain inflicted upon her person was only enhancing her paranoia, agitation and combativeness thereby seriously jeopardizing her health.

54.

Defendant Deputies knowing Melinda Neal Fairbanks used drugs, was seriously injured and suffering from mental illness summoned the Whitfield Emergency Medical Service "EMS" to the scene of the arrest.

55.

Defendant Deputies knew any further delay or denial of medical care at the scene could seriously aggravate the detainee's condition and was life threatening.

56.

When Defendant EMS arrived, she was lying in the back seat unrestrained by the seat belt. She was agitated, paranoid and incapable of understanding or complying with commands. Her skin was hot. She had been sprayed with

20

chemicals. She had been electrically charged by TASER repeatedly, continuously and for a prolonged period in hot humid conditions with second degree burns to her left breast nipple. Two darts protruded from her left breast nipple and chest above the area of her heart. She had labored breathing with saliva foam coming from her mouth. She had numerous bruises, abrasions and cuts over her entire body. She had a significant bruise and open cut to the head causing the eye to close shut with swelling sufficient to suggest injury to the brain.

57.

Defendant Deputies, individually and with a supervisor's approval, summoned EMS, but each separately and together, refused to transport or assist in her transportation to the hospital.

58.

A request for assistance in transport had been expressly requested by Defendant "EMS".

59.

Defendant Deputies chose not to inform Defendant "EMS" about life threatening medical history they caused or witnessed at the scene of the arrest.

21

60.

At the scene of arrest, when Defendant EMS denied Melinda Neal Fairbanks treatment, she did not sign the "refusal of treatment" form.

61.

Melinda Neal Fairbanks was under arrest and mentally and medically unfit to refuse treatment or sign any forms.

62.

Defendant EMS left Melinda Neal Fairbanks in the above stated condition at the scene of the arrest without calling the hospital for a physician's approval to sedate her.

63.

Defendant EMS left Melinda Neal Fairbanks in the above stated condition at the scene without assessing her medical condition and rendering aid.

64.

Hamilton Medical Center (the hospital) is located within a few minutes of Whitfield County Detention Center (the jail). Defendant Deputies while transporting Melinda Neal Fairbanks to the jail failed to monitor her condition

during transport and she arrived at the jail medically unfit for detention, bleeding, ashen, unresponsive, and in respiratory distress.

65.

In failing to provide her with essential medical care, Defendant Deputies denied Melinda Neal Fairbank's rights protected by the Eighth and Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. §1983 to be free from any act or practice that is cruel and unusual punishment.

66.

When Defendant Deputies realized Melinda Neal Fairbanks' medical condition was serous and life threatening, it was within their discretion to call EMS, but ministerial when they refused to assist in, monitor or transport her to the hospital for immediate medical care.

67.

Defendant Deputies' acts and omissions as hereinabove described in the arrest, search and secure by excessive use of force violated department policy and procedure and Peace Officers Standards. Defendant Deputies' failure to ensure medical treatment for life threatening injuries violated department policy and procedure and Peace Officers Standards.

23

68.

Defendant Deputies should not be entitled to qualified immunity for excessive use of force and failure to provide essential medical care in violation of 42 U.S.C 1983 and the Fourth, Eighth, and Fourteenth Amendments of the Constitution of the United States.

69.

Defendant Deputies should not be entitled to sovereign immunity for refusing and failing to perform ministerial acts in her arrest and detainment.

70.

Defendant Taser Company manufactured model M26 TASER, believed to be serial number P3-025678, used by Officers of the Whitfield County Sheriff's Department against Melinda Neal Fairbanks.

71.

Defendant Taser Company and John Doe III advertised, sold, distributed, and trained Defendant Deputies on the use of its TASER.

24